WILLIAM THOMPSON *vs.* LOWELL, LAWRENCE, AND HAVER-
HILL STREET RAILWAY COMPANY.

Essex. March 2, 1898. — April 1, 1898.

Present: ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Personal Injuries — Street Railway — Maintenance of Pleasure Resort — Neg-
ligence — Action — Assumption of Risk.*

If a street railway corporation maintains a pleasure resort on the line of its rail-
way, containing a stage for exhibitions, and enters into a contract with a man-
ager, under which the latter furnishes and manages, among other entertainments
there, an exhibition of marksmanship by a man born without hands, a butt being
provided to receive the bullets, and the corporation pays for advertising these
exhibitions and carries posters on its cars, all the appliances being furnished by
the manager or the performer, and nobody in the corporation's employ exercis-
ing any superintendence or control over the performance, a spectator who comes
to the exhibition on the corporation's car, and who immediately after a shot had
been fired is struck in the eye by something which probably was a small frag-
ment of a bullet or other metallic substance that flew from the impact when
the bullet hit the butt, is entitled, in an action against the corporation for his
injury, to have the case submitted to the jury, and cannot be held to have as-
sumed the risk of the accident.

TORT, for personal injuries sustained by the plaintiff, through
the alleged negligence of the defendant. Trial in the Superior
Court, before *Dunbar*, J., who allowed a bill of exceptions, in
substance as follows.

The evidence tended to establish the following facts. The
defendant was the owner of an electric street railway between
the cities of Lowell and Lawrence, and owned and maintained a
grove as a pleasure resort on the line of the railway. The grove
was fitted up by the defendant as a place of public recreation
and amusement, with certain permanent fixtures, among which
were a pavilion used for band concerts, a large platform or stage
for amusement exhibitions, and a large number of benches situ-
ated north of the stage for the accommodation of those who wit-
nessed the exhibitions. The stage was seven feet in height, and
the benches, the nearest of which was about twelve feet from
the stage, were arranged in sections, with aisles between, and
were situated upon rising ground which sloped up and away

from the stage, so that each bench was raised a little higher than the one in front of it. The defendant entered into a written contract with one Gorman, a theatrical and amusement manager, under which the latter furnished and managed certain attractions at the grove for a period of ten weeks during the summer of 1896, a different attraction being presented each week, and the materials, instruments, and appliances used in the exhibitions other than the permanent fixtures were furnished either by Gorman or by the exhibitors employed by him. In addition to the money consideration named in the contract, the defendant paid for newspaper advertising, the copy for which was furnished by Gorman, for placarding certain posters also furnished by the latter, and carried posters upon its cars, the object of the advertising and posters being to attract people to the grove. No admission fee was charged, the defendant getting its profit from carrying the people who attended these exhibitions, which were given in the afternoon and evening of each day.

During the week beginning on August 10, 1896, one of the attractions so announced and advertised, and furnished under the contract, consisted of an exhibition by a man named Unthan, who was born without hands, and who, among other things, was advertised to give and did give an exhibition of marksmanship. The performer sat in a chair at the west end of the stage, and at the east end of the stage, directly opposite him and about twenty feet away, was a table upon which rested a butt to receive the bullets which the performer discharged from a rifle at various small objects, which were either placed on the table or held in the fingers of Unthan's assistant a few inches in front of the butt. This butt consisted of a steel plate about half an inch thick and about a foot square, to which was fastened a spruce plank about two inches thick and of the same size as the plate, and the butt rested in an iron easel which was provided with three or four legs a few inches in length, the rear legs being a little shorter than the others so that the butt inclined slightly away from the performer. The easel was not fastened to the table, nor was the table fastened to the stage. The wooden and metallic parts of the butt were fastened together by two iron screws near the top of the butt, which were inserted through holes in the steel plate

and screwed into the wood, and by a round steel or wrought iron spike, which was inserted through a hole in the steel plate near the bottom of the butt, and driven through the wood, and which was bent down and clamped on to the wooden surface of the butt for about two inches. All of the appliances, such as the butt, rifle, easel, and table, used in the exhibition, and the person who acted as stage assistant, were furnished by Unthan under his contract with Gorman. The exhibition consisted of various feats of marksmanship, such as shooting at the bowl of a clay pipe, then at the stem of the pipe, knocking the ashes off a cigar, and shooting first at the flat side of a playing card, and afterwards at a playing card so placed that its edge would be towards the performer. The marksman loaded, managed, and fired the rifle with his lower limbs, the legs, feet, and toes doing the work or- dinarily done by arms, hands, and fingers, and the exhibition was one that had been given at various theatres and places of amusement, in and out of doors, in this country and in Europe, for ten years and upwards.

The plaintiff testified that he had been at the grove on three or four other occasions to witness other exhibitions than this, and was familiar with the location of the stage and seats; that he saw the advertisement of the exhibition to be given by Unthan, and knew it was to be an exhibition of shooting; that on the evening of August 12, 1896, he went to the grove in one of the cars of the defendant, and selected his seat upon one of the benches; that there was a large number of people present; that he sat on either the fifth or seventh bench from the front, and was either thirty-three feet or thirty-eight feet north from the end of the stage on which the table and butt were placed, and was so situated with reference to the butt, which was a foot or a foot and a half above his head, that a line drawn from him to the butt would intercept the line of fire at a little less than a right angle; that he had a full view of the performance on the stage; that he saw the performer come on the stage, and saw the assistant arrange the butt on the stage, and knew the shooting was about to begin; that he saw the position of the butt and the position of the performer, saw him shoot first at the bowl of the clay pipe, and then at the stem of the pipe, which was hit and broken by the bullets, and then saw the performer shoot at a

playing card, which was placed in such a position as to bring its edge towards the performer, and heard it announced by the assistant, and knew that the performer was going to try to hit the edge of the card.

There was evidence that the butt was so placed that the side farthest from the seats was slightly nearest to the performer; that two or three shots had been fired at the pipe; that when a bullet missed the object it made a noise as it struck the butt; that the first shot fired at the card missed the card and was heard to strike the butt; and that immediately after the firing of this shot the plaintiff felt a pain in his eye, jumped from his seat, put his hand to one of his eyes, and exclaimed that he was hurt. The plaintiff testified that he did not hear or see any missile. A medical witness for the plaintiff testified that he found a cut one third of an inch long on the plaintiff's eye, of such a nature as to indicate that it was done by a very thin, sharp object; that the cut was on the under edge of the upper lid; that at the extreme edge of the lid and just under the lashes the skin was shaved off clean, as if with a knife; that underneath he found a cut in the sclerotic coat extending over the eye; that it was a clean cut through the coats of the eye; and that then he examined with an ophthalmoscope and saw some blood, and he thought he saw a small foreign object inside of the eye. On cross-examination, he testified that he could not swear that there was a foreign body in the eye, but that the condition might be caused by a foreign body, or by other things, such as inflammation; and that the eye might have been cut and the object not have gone in, and it might have been caused by an object cutting across the eye.

The wooden part of the butt was put in evidence at the trial. It had been used three times before, twice on the day preceding. The bullets after penetrating the wood were flattened against the steel plate, and it was possible to run the blade of a case knife between the wood and metal parts of the butt. On the morning after the accident the butt was taken apart, and pieces of flattened bullets fell out from between the two parts of the butt and on to the stage. The medical witness for the plaintiff testified that, on the morning after the accident, he saw upon the stage what he should call thin shavings of bullets, none of them

more than two or three feet away from the table; and that a piece of these shavings might be an adequate cause of the injury to the plaintiff's eye. The defendant provided two or three special police officers, whose duty was to move about the grounds and preserve order; but the only persons upon the stage were the performer and the assistant who managed the exhibition, and who were both in the employ of Gorman. Nobody in the employ of the defendant exercised any supervision or control over the performance.

The defendant asked the judge to rule as follows:

" 1. Upon all the evidence in the case, the plaintiff is not entitled to recover. 2. There is no evidence in the case upon which the jury would be justified in finding that the plaintiff was injured by the negligent act or omission of the defendant, or of any servant or agent of the defendant. 3. The contract between the defendant and Gorman, by virtue of which the latter furnished and managed the exhibition and provided the appliances, was a lawful contract, and the defendant 'was not responsible unless the exhibition was in its nature such that it would necessarily bring wrongful consequences to pass, unless guarded against, and the defendant failed to exercise due care to prevent harm."

The judge refused to give the first and second rulings requested, and, instead of the third ruling requested, instructed the jury as follows:

" The contract between the defendant and Gorman, by virtue of which the latter furnished and managed the exhibition and provided the appliances, was a lawful contract, and the defendant is not responsible unless the exhibition was in its nature such that it would necessarily or probably cause injury to some person present under the defendant's invitation, unless guarded against, and the defendant failed to exercise due care to prevent harm."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*J. P. Sweeney*, for the defendant.

*C. A. DeCourcy*, for the plaintiff.

ALLEN, J.  The St. of 1895, c. 316, authorizes street railway companies to acquire, hold, equip, and maintain real estate to be used for purposes of recreation and for pleasure resorts, the admission being free. By virtue of this statute, the defendant

maintained such a place on the line of its railway, which contained a large platform or stage for exhibitions. The defendant entered into a written contract with a manager, under which the latter furnished and managed various entertainments there, and amongst them an exhibition of marksmanship by a man born without hands. The defendant paid for advertising these exhibitions, and carried posters on its cars. The plaintiff, having seen an advertisement, was a spectator at the exhibition of marksmanship, having come on one of the defendant's cars. A butt was provided to receive the bullets. All the appliances were furnished by the manager or the performer, and nobody in the defendant's employment exercised any supervision or control over the performance. Immediately after a shot had been fired, something struck the plaintiff in the eye. It is not made plain just how the accident occurred, but on the evidence the jury might find that the plaintiff was struck in the eye by a small fragment of a bullet or other metallic substance which flew from the impact when the bullet hit the butt. There was no suggestion that he was not himself in the exercise of due care, or that he was not in a place provided for spectators.

The defendant asked for an instruction to the jury that it " was not responsible unless the exhibition was in its nature such that it would necessarily bring wrongful consequences to pass, unless guarded against, and the defendant failed to exercise due care to prevent harm." The judge, instead thereof, instructed the jury that " the defendant is not responsible unless the exhibition was in its nature such that it would necessarily or probably cause injury to some person present under the defendant's invitation, unless guarded against, and the defendant failed to exercise due care to prevent harm." The fact that the exhibition was provided and conducted by an independent contractor would not wholly relieve the defendant from responsibility, provided it was of such a kind that it would probably cause injury to a spectator, unless due precautions were taken to guard against harm. *Curtis* v. *Kiley*, 153 Mass. 123. *Richmond & Manchester Railway* v. *Moore*, 94 Va. 493. *Southern Ohio Railroad* v. *Morey*, 47 Ohio St. 207. *Hawver* v. *Whalen*, 49 Ohio St. 69. *Bower* v. *Peate*, 1 Q. B. D. 321. The instruction as given was right.

But even under this rule the defendant contends that there was

no evidence upon which the jury were justified in finding that the plaintiff was injured by any negligent act or omission on its part; or, in other words, that there was no evidence of any failure on its part to perform its duty in the premises.   The question is suggested how far the defendant was bound to go in supervising the instruments and appliances used, and the other details of the exhibition.   Should it be held to inspect the rifle and the cartridges, to see if they were safe ?   Without undertaking to go into unnecessary detail, it is apparent that there was evidence tending to show that the accident happened from a cause which might have been prevented, and that it ought to have been foreseen and guarded against by somebody, either by the defendant or by the manager; and the jury might come to the conclusion that in the general arrangements for an exhibition of this nature the butt should be so placed that fragments which might fly from the impact of the bullets could not reach the spectators, and that due care was not taken in the arrangement of the stage with reference to possible accidents of this kind, and that the defendant itself failed in its duty in this respect. We cannot say that this was so much a matter of transitory detail that the manager alone was responsible for an omission to pay proper attention to securing the safety of spectators from such a risk.   The case, therefore, was rightly submitted to the jury.

Nor can it be held that the plaintiff assumed the risk.   He might well rely on those who provided the exhibition and invited him to attend, to take due care to make it safe from such an injury as he received.

*Exceptions overruled.*