NORTH AMERICAN DREDGING CO. v. PUGH. (No. 7391.)

(Court of Civil Appeals of Texas. Galveston. May 16, 1917. Rehearing Denied June 14, 1917.)

1. MASTER AND SERVANT &⇒315—INDEPENDENT CONTRACTOR.

An original employer is not ordinarily liable in damages for the acts of an independent contractor to whom he has let or sublet the work, and over whom he has retained no control and no authority as to directing the mode and manner of doing the work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1241, 1244–1253, 1255, 1256.]

2. MASTER AND SERVANT &⇒319 — INDEPENDENT CONTRACTOR.

Where the very nature of the work contracted to be done subjects to probable injury the person or property of another, the party contracting for such work is liable for the acts of an independent contractor performing it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1259, 1260.]

3. MASTER AND SERVANT &⇒319—LIABILITY FOR INDEPENDENT CONTRACTOR'S ACTS.

Where the dredging work sublet to an independent contractor necessarily required the digging away of a part of land and the construction of levees on the bank and by the pumping silt, etc., was necessarily cast upon the land behind the levees, injuries thereby caused proceeded rather from the doing of the work itself than from the manner in which it may have been done, so that the one contracting for such work was liable for the injuries, notwithstanding it was let to an independent contractor.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1259, 1260.]

4. DAMAGES &⇒60—INJURIES TO LAND.

The owner of lands used and intended to be used as a home for farm purposes, which were practically ruined for such purposes by dredging operations, was entitled to recover for the special damages sustained, and his right could not be offset or diminished by showing a general increase in the value of the land in that locality, alike common and inuring to the benefit of all owners, resulting from such dredging.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 115, 116.]

5. APPEAL AND ERROR &⇒1062(3)—HARMLESS ERROR—WITHDRAWING ISSUES.

In view of Rev. St. arts. 1980, 1981, as to resubmission of issues where the verdict is not responsive, the court's action in withdrawing certain issues submitted held not prejudicial error.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4214.]

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by W. Pugh against the North American Dredging Company. From judgment for plaintiff, defendant appeals. Affirmed.

Maco & Minor Stewart and R. W. Houk, all of Houston, for appellant. T. S. Taliaferro and Hutcheson & Hutcheson, all of Houston, for appellee.

GRAVES, J. This appeal is from a judgment of the court below for $1,950 in favor of appellee and against appellant, entered upon the findings of a jury upon special issues, as damages for certain alleged injuries to and depreciation in the values of his five-acre homestead and his one-acre burial ground, situated on opposite sides of Buffalo bayou near the Turning basin (Houston ship channel), and adjacent to what was known as section 3 of this channel under the contracts for dredging it.

It was alleged that, in dredging the ship channel in that vicinity, appellant built levees along its sides, and then pumped and caused to be cast upon appellee's lands large volumes of clay, mud, water, and silt, and also obstructed the natural drainage thereof, causing the damages complained of. Appellant's main defense was its contention, presented here under its first four assignments, that if appellee, Pugh, suffered any damages, it was through no fault of appellant, as none of the dredging in the vicinity where his lands lay was done by it, or its agents, but by an independent contractor, namely, the Standard American Dredging Company, with which it was not connected, over which it had no control, and for whose acts in doing the work that caused the damage it was in no way responsible. The questions of what company did the work causing the overflow, and whether the Standard American Dredging Company was an independent contractor, were submitted as issues Nos. 2 and 3 to the jury, who answered that appellant did it, and that the Standard Company was not an independent contractor; but appellant complains that there was no evidence to sustain these findings, and we are constrained to agree with it. The uncontroverted proof showed that appellee's lands were situated near the Turning basin on the Houston ship channel, that all that part of the channel for nine miles from the basin down the bayou toward Galveston was designated as section 3 under the dredging contracts; that the dredging of all the upper portion of this section where appellee's lands lay, and for at least 1,500 feet lower down, had been sublet by appellant to, and had all been actually done by, the Standard American Dredging Company with its own dredge boat, Houston; that appellant neither owned nor operated this dredge boat, nor had any control over the performance of

the work thus done with it by the Standard American Dredging Company, nor itself did any dredging at all in that locality, or opposite to the lands of appellee, but began 1,500 feet below them and dredged from that point still further down with its own boat Galveston; that appellant assigned this upper portion of section 3 to the Standard American Dredging Company, and while appellant received from the original contracting company under the United States government the monthly payments for the portion of the channel dredged by the Standard Company, it passed these rights along to the latter company in their entirety, and had no control over the work done by it. In fact, appellee, Pugh, himself testified that the dredging near his land was done by the dredge boat, Houston. We think this undisputed evidence left no basis for the jury's findings that appellant 'did the work causing the damage, and that the Standard Company was not an independent contractor, but conclusively established the fact, not only that the Standard American Dredging Company did the work, but also that it was an independent contractor; and we sustain so much of the first four assignments as raise that issue; but in doing so, we are yet unable to agree with appellant that such conclusion necessarily 'determines the case in its favor, and that, if it had been reached by the trial court, would have entitled it to an instructed verdict there.

[1] That an original employer is not ordinarily liable in damages for the acts of an independent contractor to whom he has let or sublet the work, and over whom he has retained no control and no authority as to directing the mode and manner of doing the work, is well settled. Southern Oil Co. v. Church, 32 Tex. Civ. App. 325, 74 S. W. 797, 75 S. W. 817; Cunningham v. Railway, 51 Tex. 509, 32 Am. Rep. 632; Simonton v. Perry, 62 S. W. 1090; Mo. Ry. Co. v. Ferch, 36 S. W. 488; Wood on Master and Servant, pp. 617, 618; Callahan v. Phillips Academy, 180 Mass. 183, 62 N. E. 260; 26 Cyc. 1573.

[2] But it is likewise and equally well established that where one contracts for work to be done, the very nature of which subjects to probable injury the person or property of another, the party contracting for such work is liable for the acts of an independent contractor performing the same; and we think the last-stated principle rules the case at bar.

The general rule governing and applied by the courts in this class of cases is well stated in Ruling Case Law, vol. 14, c. IV, pp. 86, 87, §§ 23, 24, and in authorities cited under footnotes 19 and 4, as follows:

"Where one contracts for certain work to be done, and an injury is occasioned to a third person as the direct result of the doing of the work, not as a result of negligent acts of the contractor, the employer is liable for such injury. In other words, he is answerable for injuries which necessarily follow the performance of the work, and which are not the result merely of collateral negligence of the contractor."

"For liability to attach to the employer of an independent contractor, it is not required that it be absolutely necessary that injuries to third persons will result from the doing of the work, but if the work is so inherently or intrinsically dangerous that injuries will probably be occasioned to third persons unless proper precautions are taken, the employer may be liable for such injuries, though primarily they are caused by the negligence of the contractor in failing to take the necessary steps to avoid the danger."

[3] That the facts here shown brought this case within these rules we think is not susceptible of doubt; appellant's manager admitted that the officers of the company were aware that it would be necessary to make deposit along the banks of the bayou of the matter removed from the bayou. The undisputed evidence established that the one acre, which the jury found was damaged to the extent of $500, was on the very bank of the bayou, and that the work necessarily required the digging away of about one-fourth of this acre. The witness Pugh testified without dispute that his five-acres homestead tract was about 300 or 400 yards from the bayou, and that the pressure behind the suction pumps necessarily cast the water, silt, etc., upon his land; also, that the levees were constructed on and around his property, and the government engineer had pointed out to the contractors from the beginning that the natural drainage upon his lands was thereby obstructed and the water caused to stand thereon.

We think the injuries here shown by the uncontradicted proof to have actually resulted proceeded rather from the doing of the work itself than from the manner in which it may have been done, and that they might reasonably have been so anticipated by appellant as the probable consequence, under the conditions existing, of the dredging work it sublet and assigned to the Standard Dredging Company, and that the jury's finding to this effect had ample support in the evidence. Cameron Mill & Elevator Co. v. Anderson, 98 Tex. 159, 81 S. W. 282, 1 L. R. A. (N. S.) 198; Cameron Mill & Elevator Co. v. Anderson, 34 Tex. Civ. App. 105, 78 S. W. 9; Bonaparte v. Wiseman, 89 Md. 12, 42 Atl. 918, 44 L. R. A. 484; Braisted v. Brooklyn, 46 App. Div. 204, 61 N. Y. Supp. 674; Thompson v. Lowell Ry. Co., 170 Mass. 577, 49 N. E. 913, 40 L. R. A. 345, 64 Am. St. Rep. 323; Cameron v. Oberlin, 19 Ind. App. 142, 48 N. E. 387; Baumeister v. Markham, 101 Ky. 122, 39 S. W. 846, 41 S. W. 816, 72 Am. St. Rep. 397.

Our stated conclusions make unnecessary further discussion of the question presented under assignments numbered 6 and 7 on pages 18 and 19 of appellant's brief; but we call attention to its violation of rule 29 (142 S. W. xii), regulating the preparation of briefs for this court, and requiring the assignments therein to be numbered consecutively, in that it offers duplicate sets of assignments numbered 6 and 7, respectively.

[4] Contention is also made that the evi-

dence showed the market value of the lands to have been increased as a general result of and after the dredging, and not to have been depreciated, as found by the jury; but when the proper rule for the measurement of the damages here suffered is applied, we think this contention untenable; appellee's lands had been used by him, and were intended in the future to be so used, as a home, for farming purposes, and as the means, by farming thereon, of making the living of himself and family. The proof showed in considerable detail the actual damages suffered in sums at least aggregating the amount of the judgment, and that after the injuries complained of, the property had little value and was almost ruined, except, at most, as to one acre of the homestead tract, for these uses and purposes to which it had before been applied, and for which it was adapted. Appellee was entitled to recover for the special damages thus sustained by him, and it could not be offset, nor diminished, by showing a general increase in the values of the lands in that locality, alike common and inuring to the benefit of all owners, resulting from the dredging of the ship channel by the United States government. Railway v. Fuller, 63 Tex. 467; Railway v. Hall, 78 Tex. 169, 14 S. W. 259, 9 L. R. A. 298, 22 Am. St. Rep. 42.

[5] Appellant's insistence that prejudicial error was committed against it in the manner of receiving the verdict alone remains for discussion. But after carefully considering the question, we are unable to say that any such error is shown.

The net result of the proceedings reflected by the court's charges, the verdict, and the bill of exceptions relating to the matter, is that the question as to depreciation in value of the five-acre homestead tract, treated both as an improved and an unimproved property, was under separate issues first submitted to the jury. After they had reported their findings, and had been sent back by the court to complete their verdict by answering issues Nos. 10 and 11, relating to the value of this tract considered as unimproved, and after they had again reported the same aggregate depreciation in value as at first, but apportioned differently, according as the tract was considered as improved or not, the court then by written instruction withdrew these issues Nos. 10 and 11 from their consideration, whereupon the jury returned the final verdict as entered, upon which, before receiving it, the court polled them, and after each juror had answered that that was his verdict, received it. At no time were different verdicts rendered, but, as stated, the same amount as to the same property each time, and only different parts of the same aggregate amount were apportioned differently according as the jury considered the tract as improved or unimproved; finally, after the court had withdrawn the two issues Nos. 10 and 11, leaving them only authorized to con-

sider it as improved, which should have been done in the beginning, they returned the same verdict as at first. Even then the court made sure of no mistake by specially, in open court in the presence of counsel for both parties, receiving the answer of each juror that such was his verdict, before accepting it.

That the court was not without authority to withdraw these issues when done, and that no prejudicial injury resulted to appellant from the entry of this verdict, we think is clear. R. S. arts. 1980, 1981; Railway v. Hubbard, 37 S. W. 25; Martin v. Petty, 79 S. W. 878.

These conclusions require the overruling of all assignments and an affirmance in all things of the judgment; and it is so ordered.

Affirmed.