Hillsborough, }
June 7, 1927. }

KATHERYN FREAR, *by her next friend, v.* MANCHESTER TRACTION, LIGHT & POWER COMPANY *& a.*

*McLane & Davis* (*Mr. McLane* orally), for the plaintiff.

*Warren, Howe & Wilson* (*Mr. Howe* orally), for the defendants.

PEASLEE, C. J. The case presents questions as to the sufficiency of the evidence to sustain verdicts against the several defendants, and as to the charge.

I. The underlying question is whether there was evidence to charge Williams with failure to use due care.

The accident resulted from the breaking of the axle of the wheel. There was evidence that the axle was of insufficient size, and that in addition to this defect in the original construction the supports at one bearing were not sufficiently secured, and that as a result there was improper motion of the bearing, thereby putting still further excessive strain upon the axle. These two defects, or either of them, if found to exist, would warrant a finding of negligence on the part of one responsible for the reasonable safety of the wheel.

There was also undisputed proof that the axle was of the size used by the maker of the structure, who apparently built a considerable number of Ferris wheels, that the wheel in question had been successfully operated for some years and that it was bought by Williams of the former operator.

From this it is argued that Williams is free from any fault as to the size of the axle because it was a "standard make" and because he reasonably relied upon the experience of the former owner.

It is said that in these respects Williams learned as much about it as the average man would have learned and is therefore free from fault. It may be conceded that a person with no expert knowledge of the sufficiency of steel to withstand strain would not appreciate the

danger. But that does not dispose of this issue. The question is whether a man of Williams' lack of scientific knowledge ought not to have appreciated his ignorance, and have taken steps to obtain the expert advice necessary to enable him to act intelligently upon the matter he had to decide. *Gobrecht* v. *Beckwith*, 82 N. H. 415. He was about to enter upon an undertaking involving highly dangerous situations to the patrons of his venture. It was essential that the precautions he took should measure up to such a situation.

The defense of purchase of a fabrication which was "standard make," does not avail the defendant. It may be that a certain product may have been so tested by use and so guaranteed by the character and reputation of the maker, that a jury would not be permitted to charge the user thereof with negligent failure to ascertain an inherent defect apparent only to one skilled in the subject. But there was no proof of such a situation here. All that appeared was that a named concern made this and other Ferris wheels with such an axle, that none of the witnesses ever heard of one being broken, and that an insurance inspector approved or "passed" them on his inspections. There was no contradiction of the testimony that according to accepted engineering practice a very much larger axle should have been used; and it also appeared that danger of breaking was constantly increased by the use of the wheel.

Upon this evidence there was a substantial issue of fact presented. Would not the average man, entering upon an undertaking involving such hazards to many other persons, make investigation, and inquire of those skilled in the science of steel construction? It would be manifest to him that he had no sufficient knowledge to pass upon the question, and that it was one for expert engineers. It cannot be said as matter of law that in such an undertaking he would rely upon the maker, or assume that use for a few years was a sufficient guaranty of continued safety. *Firszt* v. *Company*, 98 Conn. 627.

*Rollins Engine Co.* v. *Company*, 73 N. H. 92, was an action to recover damages from the maker of a piston rod for a stationary engine. One defense was that the defect was a concealed flaw in the steel, and that the defendants purchased the billet from a reputable manufacturer. "The defendants knew the forging was to be used for a piston rod for a steam engine. Merely purchasing the steel from a reputable manufacturer may not be due care in the selection of the material for such a purpose. It may be, and the evidence which the defendants offered indicates, that there are tests which can be applied to determine the character of steel. Whether the defendants did all

that due care required was for the jury, and the question should have been submitted to them." *Ib.*, 95.

In like manner it was open to Williams to obtain information as to the sufficiency of the structure he proposed to operate. If there is any distinction to be drawn between that case and this, it is in the plaintiff's favor.

Apart from responsibility for fault in original design, the evidence that the support was not properly secured and that this put an added strain upon the axle was sufficient to call for the submission of the case to the jury. The motion for a nonsuit as to Williams was rightly denied.

II. The issue of liability of the street railway involves the question whether there is any evidence of a relation existing between the railway and the plaintiff, and the extent of the duty arising from such relation.

The railway was the lessee of the park as a whole, and advertised it as a place of public resort. A lease of space for the erection of a Ferris wheel was made to Williams by the railway's lessor. This was after the execution of the lease to the railway, but it appeared that the lessor, the traction company, was also sole owner of the railway stock, and that leases like the one to Williams were so made by a mutual understanding between the company and the railway.

The public advertisements of the park were usually unsigned. Some of them included an express invitation to ride upon "The Honeymoon Express," as the Ferris wheel was called. This advertising was done by or on behalf of the railway.

That such an invitation created a relation between the invitor and those who came upon its premises in accordance with the invitation is not open to serious question. *Hobbs* v. *Company*, 75 N. H. 73. The real issue relates to the Williams lease and its effect upon the duty of the railway as to the condition and operation of the premises leased to him.

Non-liability in those respects is urged upon two grounds. A landlord is not liable to his tenant's guests for the tenant's negligent maintenance of the leased premises. An owner is not responsible for the conduct of an independent contractor. The soundness of these general rules is not questioned. But, upon the evidence in this case, it could be found that neither of them was applicable to the situation.

The railway invited the plaintiff, as one of the public, to the park. "The liability in such a case should be coextensive with the inducement or implied invitation." *Plummer* v. *Dill*, 156 Mass. 426, 430.

As before stated, the invitation was not merely a general one but specified the "Honeymoon Express" as one of the attractions which it offered. This structure was within the railway's park. In such a situation the public would be justified in assuming that the railway invited them to take the ride upon its premises. The railway is chargeable with knowledge of this reasonable attitude of the public, and hence arose the duty to use due care to see that the wheel was safe.

The relation of the parties is established by their conduct towards each other. It is not varied or nullified by facts known to one and not communicated to the other, when the possessor of superior knowledge also knows that the other is probably ignorant. The invitation imposed a duty to use due care to have the place safe as far as the railway ought to have understood that the public would understand that the invitation extended.

The extent of the railway's duty is not measured by the conscious reliance of some individual visitor upon its specific invitation to ride upon the wheel. The railway voluntarily assumed a certain position in relation to the public. In some way the plaintiff became informed of this place of public resort. Such information came either directly or indirectly from the railway. Her entry upon the premises resulted from the railway's invitation, and the effect so attained was one intended by the railway. It was a foreseeable and foreseen result of the invitation.

"Implied invitation, therefore, is part of the law of negligence by which an obligation to use reasonable care arises from the conduct of the parties; its essence is that the defendant knew, or ought to have known, that something that he was doing or permitting to be done might give rise in an ordinarily discerning mind to a natural belief that he intended that to be done which his conduct had led the plaintiff to believe that he intended. It is not enough that the user believed the use was intended; he must bring his belief home to the owner by pointing to some act or conduct of his that afforded a reasonable basis for such a belief." *Furey* v. *Railroad*, 67 N. J. Law 270, 275.

The suggestion that the invitation is to be construed like a railway advertisement to visit the Weirs, or that of the plaintiff's escort for her to ride with him upon the wheel, is not well grounded in fact. The so-called invitation to visit the lakeside village at the Weirs is not an invitation in the legal sense. It is merely advice, or suggestion. There is no holding out that the railway owns or controls the Weirs.

The public are not given to understand that there is such a situation. And the invitation from the casual park visitor to share a ride upon the wheel is of course understood to be one to share with the invitor his license to use the wheel as one of the public.

Nor was the invitation one issued on the spur of the moment, or as to a recently acquired possession, if that would aid the defendant. It had been outstanding for months. Moreover, the evidence tends to show that, when the railway made the contract with Williams to erect the wheel, the invitation was in mind. Upon such a state of facts, the duty to use reasonable care to see that the wheel was safe could be found to have been upon the railway from the inception of the enterprise.

Surrender of control of the premises to Williams did not free the railway from responsibility. The issue is not one of a landlord's liability to his tenants' guests, but of his duty to his own invitees. The doctrine of non-liability for the negligence of an independent contractor, or a lessee, does not control the rights and duties of these parties. A duty was imposed, not because the railway was liable generally for faulty construction or negligent operation, but because its acts made it a sponsor for the enterprise. The invitation was such an adoption of the place invited to that the duty to use care arose. The same duty would exist as to premises owned and controlled by an entire stranger, if the defendant had in like manner invited the public thereto as to its own property. Ownership or control of property is often of importance as tending to show what the invitation was. But when the fact of invitation is otherwise shown, this feature of the situation is not controlling.

Liability to invitees is not imposed merely because of ownership, but because of the invitation. If the invitation includes a representation of ownership or control, justice and reason require that the invitor may be taken at his word in that aspect of the case as well as in others. This he is bound to know when he extends the invitation. Knowing the effect his conduct is to have upon the public, he is bound to act in reference to the situation he has thus created. If he wished to avoid such responsibility he should not extend such an invitation.

The holding out to the public created a relation. The relation gave rise to a duty to use some care. The measure of that duty is the obligation imposed by law upon one whose position the party has assumed. *Leighton* v. *Sargent*, 27 N. H. 460; *Spead* v. *Tomlinson*, 73 N. H. 46, 50. Having assumed the position of owner or occupier of premises, the railway had the duty to use reasonable care to see

that the place was safe for those who entered in pursuance of its invitation. This duty is non-delegable. *Pittsfield &c. Co.* v. *Company*, 71 N. H. 522; *Stevens* v. *Company*, 73 N. H. 159.

It could reasonably be found from the evidence in this case that the railway invited the public to use this wheel as a part of its entertainment park, that it had this purpose in mind when it negotiated the contract with Williams, and always retained it, that the plaintiff was at the place of accident because the public were so invited, and that she was injured while in the exercise of the privilege thus extended to her. Upon such findings, the defendants' responsibility for the condition of the wheel would be established.

The situation presented is by no means a novel one, and the authorities generally are in harmony with the conclusion stated above. *Thornton* v. *Society*, 97 Me. 108; *Sebeck* v. *Plattdeutsche &c. Verein*, 64 N. J. Law 624; *Richmond &c. Co.* v. *Moore*, 94 Va. 493; *Thompson* v. *Railway*, 170 Mass. 577; *Mastad* v. *Swedish Brethren*, 83 Minn. 40; *Turgeon* v. *Company*, 84 Conn. 538; *Stickel* v. *Company*, 250 Ill. 452; *Wodnik* v. *Company*, 69 Wash. 638. Other authorities are collected in 22 A. L. R. 610, *note*.

It is true that in many of these cases the exact question raised here was not presented. In most instances the plaintiff was upon the defendant's premises, and the injury was caused by the negligent conduct of the concessionaire, producing adverse results upon the defendant's premises outside the concession. In each it is held that it was the duty of the defendant to use care as to the conduct of the concessionaire; and the principle upon which the decisions are rested would impose a duty in the present case. They all depend upon a broader responsibility than that of one neighbor to consider the conduct of another as affecting the invitees of the former. The following quotations indicate the general trend of the decisions.

"It makes no difference whether admission was charged to the grounds or not. The amusement park was conducted as an attraction to its patrons by the railway company, in order to hold and increase its traffic. The plaintiff was there by the invitation of the defendant. One who invites others to come upon his premises for business or pleasure must exercise reasonable care to have and keep the premises reasonably safe for such visitors. The defendant is not relieved of this duty because it had leased the miniature railway to an independent contractor. . . . It was the defendant's place of amusement; it was its invitation which brought the plaintiff there; and it retained, despite its concessionaries, a general supervision and care of the prop-

erty. It was the duty of the defendant to use reasonable care to keep every part of the grounds to which it had invited the plaintiff in a reasonably safe condition, and to accomplish this end it was its duty to use reasonable care to see that the railway was so built, maintained, and operated as not to risk doing injury to any of its patrons while in the park." *Turgeon* v. *Company*, 84 Conn. 538, 541.

"They were admittedly the owners, managers, and operators of Luna Park, and advertised its amusement features as a means of procuring the patronage of the public for their own pecuniary advantage. . . . He [the plaintiff] was there by their invitation. There was an implied representation that the instrumentalities for amusement which they advertised were reasonably safe. The fact that the amusement was furnished by a third party under an independent contract . . . in no manner relieved them from the duty to see that the appliances were reasonably safe for the use intended. The duty of exercising reasonable care for the safety of their patrons while engaged in the performance of the very purpose for which they were invited cannot be avoided in any such way." *Wodnik* v. *Company*, 69 Wash. 638, 640.

The plaintiff was entitled to the judgment of the jury upon her case against the street railway.

III. There is no evidence to sustain a verdict against the traction company. Aside from the facts that it was the sole owner of the stock of the street railway, and leased the park to the railway and the concession to Williams, it does not appear to have had any connection with the transactions involved here. Any claim of liability based upon the division of the receipts from the wheel was expressly waived at the trial. The traction company's motion for a nonsuit should have been granted.

IV. The requests to charge largely deal with the matters which have already been considered. In addition thereto there were requests defining actionable negligence, and the question is thus raised as to the sufficiency of the instructions given upon that point. The jury were told that negligence means "the doing of some act which a cautious and prudent man would not do, or the failure to do some act which a cautious and prudent man would not neglect. In other words, negligence is the failure to observe for the protection or safety of the interests of another person that degree of care, precaution and vigilance which the circumstances justly demand and which a man of ordinary prudence and caution would exercise under the same circumstances."

This instruction plainly goes to the extreme limit of what could be deemed a proper definition of the test for actionable negligence. It sets up a "cautious and prudent man" as the standard, with but scant reference to the ordinary man. The defendant requested instructions that the test was the conduct of the average man, and that "if such a man might have done as the particular defendant did, then that defendant is not liable." This instruction should have been given. *Folsom* v. *Railroad*, 68 N. H. 454; *Warren* v. *Railway*, 70 N. H. 352; *Silver* v. *Jones*, 81 N. H. 297; *Sevigny* v. *Company*, 81 N. H. 311. The defendant was entitled to have this aspect of the test for responsibility stated to the jury.

Whether a general exception to the definition given in the charge could be sustained, need not be considered. If under such circumstances the charge could be deemed a proper statement of the law, it would not aid the plaintiff. The specific defect complained of was brought to the attention of the court, and the defendant can insist upon its correction. *West* v. *Railroad*, 81 N. H. 522, 530; *Upton* v. *Railroad*, 82 N. H. 94.

The jury were also instructed that if the accident resulted from "a flaw in the axle itself for which the defendants were in no way responsible, of which they had no knowledge and which they could not by the exercise of reasonable care and diligence have discovered, and that this was the sole cause of the accident, you may be justified in finding that none of the defendants were liable." The defendants excepted to the denial of a request to charge that upon such facts the jury must return verdicts for the defendants. It is manifest that the requested instruction should have been given. Upon the stated facts but one verdict could be found.

The remaining exceptions relate to details of the trial, and as they are not likely to arise upon a new trial, they have not been considered.

*Judgment for the traction company: new trial as to the other defendants.*

All concurred.