24 N.J. Super. 28 (1952)
93 A.2d 608
RAYMOND V. GARAFOLA, AN INFANT, BY HIS GUARDIAN AD LITEM, VINCENT JAMES GARAFOLA, AND VINCENT JAMES GARAFOLA, INDIVIDUALLY, PLAINTIFFS-APPELLANTS,
v.
ROSECLIFF REALTY CO., INC., A CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued December 1, 1952.
Decided December 19, 1952.
*32 Before Judges EASTWOOD, GOLDMANN and FRANCIS.
Mr. Bernard Chazen argued the cause for the plaintiffs-appellants (Mr. Nathan Baker, attorney).
Mr. George Winne argued the cause for the defendant-respondent (Messrs. Winne & Banta, attorneys).
The opinion of the court was delivered by EASTWOOD, S.J.A.D.
At the conclusion of the trial the Law Division, on defendant's motion, entered a judgment of dismissal from which the plaintiffs appeal. Plaintiffs' action was instituted for the recovery of damages occasioned by the accidental injury of the infant plaintiff and for the recovery for the loss of services and out-of-pocket expenses suffered by the father, Vincent James Garafola.
On July 29, 1950 Vincent J. Garafola took his wife and two sons, Andrew, age 6 years, and Raymond, age 9 years, to the Palisades Amusement Park for an evening's entertainment. At approximately 9:30 P.M. Mr. Garafola purchased tickets for his sons for a miniature railroad train ride. The train was owned and operated by the defendant for the amusement of the park patrons. One side of the passenger cars was closed and the other open for approximately chest height of the patrons. The train traveled on permanent tracks similar to a regular railroad and traveled at approximately 15 miles per hour during its operation.
At one point in the route of the train the track curved near a tree, the distance therefrom being a matter in dispute. On the night in question the two children were seated together in the last seat of the coach, Andrew sitting next to the closed side of the coach and Raymond, the plaintiff, on the open side of the coach. During the ride, Raymond testified that he put his arm over the side of the coach and *33 was adjusting the sleeve of his shirt when his arm struck the tree, forcing his wrist against the car causing him the injury complained of. There were no eye witnesses to the happening of the accident. At the end of the ride Raymond was found by his parents in his injured condition. He was taken to the park doctor and from there home. The next morning he was taken to Saint Vincent's Hospital where it was learned that he suffered a fracture of the distal end of the radius and ulna bones, the two bones of the forearm at the wrist.
Plaintiffs allege that the injury was caused by the negligence of the defendant in having its device constructed in a defective manner, failing to warn patrons of impending danger caused by the presence of the tree and failure to employ sufficient safeguards to properly protect patrons using the train.
Defendant admitted ownership and operation of the miniature train, but denied any guilt of negligence in either the construction or maintenance of the device or in its operation, and as affirmative defenses contended that plaintiff voluntarily assumed the risk and contributed to the happening of the accident by his own negligence.
At the end of plaintiffs' case the defendant moved for a dismissal which motion was denied. Again, at the conclusion of the entire case defendant moved for an involuntary dismissal of plaintiffs' action. The court granted defendant's motion stating that there was no proof of any departure from standard construction; that there was testimony in plaintiffs' case that there was no necessity of warning patrons of the presence of the tree, and that the proofs failed to establish the happening of an accident, for the reason that it is alleged that the child's elbow struck the tree and there was testimony that the clearance space between the train and the tree was greater than the length of the child's arm from his shoulder to his elbow.
The plaintiffs contend that there was sufficient evidence from which the jury might reasonably find want of proper *34 care by the defendant under the circumstances; that the matter should have been submitted to the jury for determination; that the jury might find defendant guilty of negligence in laying out the tracks and operating its railroad, even though there was no proof of deviation from a standard; that reading the deposition of defendant's superintendent did not make him plaintiffs' witness and that his reasons for laying the tracks as he did was material to the issue and should have been admitted. Plaintiffs further argue that their witness, Fromer, should have been allowed to testify as an expert on miniature trains by reason of his training and experience; that the photograph produced by defendant was taken posed, did not represent the conditions at the time of the accident and should not have been admitted into evidence; that the court erred in refusing to permit the plaintiff Raymond Garafola to rebut the defendant's testimony that the car would not sway; that the court erred in excluding testimony of Vincent Garafola as to the amount of the medical bills.
The predominant question presented for consideration in the present appeal is whether the evidence introduced in behalf of the plaintiffs, together with all of the favorable inferences logically and legitimately to be drawn therefrom, adequately presented a cause of action against the defendant. We therefore direct our attention to the scope and probative content of the evidence.
The proofs proffered by plaintiffs indicated that defendant operated a train in a park area containing trees; that there were no lights on the trees; that there was no warning of possible obstructions or impending dangers en route; that the light upon the train track was not of sufficient strength to clearly illuminate the area; that the panel height of the sides of the cars was less than two feet; that the top of the panel was approximately midway between the plaintiff Raymond's elbow and shoulder; that at one point the train tracks curved near a tree; that the clearance distance between the coach, at the point where Raymond was seated. *35 and the tree adjacent to the tracks, was approximately 19 inches. The injured plaintiff asserted that his arm definitely struck the tree as he passed and forced his hand against the side of the car. The plaintiffs sought to establish that in the forward motion of the train around the curve the rear portion of the car (where Raymond was seated) would swing on its swiveled wheels closer to the tree than the 19 inches measured in stationary position. Defendant's witness testified that he found the measured distance to be 23 inches from the center of the car and conceded that it would be "a couple of inches less" from the last seat in the car. Sway of cars while in motion was denied by the defendant. Plaintiffs' attempt to rebut the denial of swing or sway of the train was excluded and will be considered elsewhere in this opinion.
It has been repeatedly held by our courts that in considering defendant's motion for judgment of dismissal, the court must necessarily accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences that may be drawn therefrom in his favor. McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229 (1950). And where fair-minded men might honestly differ as to the conclusions to be drawn from the facts whether controverted or uncontroverted, the questions at issue should be submitted to the jury. Antonio v. Edwards, 5 N.J. 48 (1950); Sokol v. Liebstein, 9 N.J. 93, 98 (1952).
"Generally, whether a particular act constitutes negligence is a mixed question of law for the court and fact for the jury; and negligence cases in which a nonsuit may be allowed or a verdict may be directed are exceptional. On a motion for nonsuit all conflicts in testimony, even those produced by a mathematical calculation to show that the plaintiff's evidence that an object was not visible from a certain point was contrary to fact, must be resolved in favor of the plaintiff. In many cases, the peremptory disposition of the cases has been held to constitute reversible error. A cause should never be withdrawn from the jury unless it appears as a matter of law that a recovery cannot be had upon any view of the facts which the evidence reasonably tends to establish. Nevertheless, there are instances *36 in which the court can say that failure to act was negligence as matter of law, and others where it can say that such failure was not negligence, and between the extremes there is a zone in which the question must be submitted to the jury. As a general rule, the issue or issues of negligence and contributory negligence are to be determined by the jury, and ordinarily should not be disposed of by the court in a peremptory manner. * * *" 38 Am. Jur., Negligence, sec. 344, pp. 1041-1042.
In the matter sub judice the determination of the questions involved depended upon an evaluation of the testimony and legitimate inferences that were conflicting, and it is our opinion that fair-minded men might well have differed as to the conclusions to be reached therefrom. There was conflicting evidence regarding the distance from the car to the tree. One view of the evidence might indicate that the distance was such that it would have been impossible for the boy to have struck the tree. On the other hand, considering all of the legitimate inferences flowing from the evidence on the question of distance, the jury might have found that the boy's story was credible. But most important is the boy's testimony that his injury occurred when his arm came into contact with the tree. In granting the motion of dismissal the court passed upon the weight and credibility of that testimony. This is the function of the jury, not the court. The resolution of these factual issues should have been submitted to the jury for its determination.
We turn to a consideration of the degree of care to which the defendant should be held. As stated in 38 Am. Jur., supra, sec. 29, pp. 673, 674 and 675:
"* * * The degree of diligence which one must observe in the performance of his common-law duty to use care to prevent injury to others is ordinary care or reasonable care. Such terms are essentially relative. Although there is a standard by which conduct is tested to determine whether the duty to use ordinary care has been observed, it is not a fixed legal standard by which a court is enabled to say arbitrarily in every case what conduct shall be considered reasonable and prudent, and what shall constitute ordinary care, under any and all circumstances. The duty which one person may owe in a particular situation for the protection of another person is measured by the exigencies of the occasion. In explanation of what *37 constitutes negligence, the statement frequently is made that negligence is a failure to exercise the degree of care demanded by the circumstances of the particular case. Both ordinary care and reasonable care mean due care, that is, care according to the circumstances of the case. In other words, ordinary care depends upon the responsibility which is cast upon the actor by the circumstances under which he acts or refrains from acting. The greater the danger which is known or is reasonably to be anticipated, the greater is the degree of care which is required to be observed. * * * The surrounding facts and circumstances are of controlling importance. What may be deemed ordinary care in one case may, under different surroundings and circumstances, be negligence. More care and vigilance must be exerted to avoid liability for negligence in dealing with a dangerous agency than with an instrumentality in which danger is not so apparently inherent. The rule which requires ordinary care prevails at all times, but ordinary care may be a high degree of care under some circumstances and a slight degree of care under other circumstances. * * *"
Cf. Sebeck v. Plattdeutsche Volkfest Verein, 64 N.J.L. 624 (E. & A. 1900); Guinn v. Del. & Atl. Telephone Co., 72 N.J.L. 276 (E. & A. 1905). More recently this matter was considered by our court in the case of Simpson v. Duffy, 19 N.J. Super. 339 (App. Div. 1952), wherein it was stated at pp. 348-349:
"* * * However, there is no precise measure by which this duty of care can be applied. Perhaps the most specific definition of ordinary or reasonable care is care commensurate with the particular risk involved, or care graduated according to the danger attendant upon the activity pursued. Goldberg v. New York Tel. Co., 2 N.J. Misc. 449 (Sup. Ct. 1924); Blumenfeld v. Hudson & Manhattan Railroad Co., 89 N.J.L. 580, 99 A. 321 (E. & A. 1916); 38 Am. Jur., Negligence, secs. 29, 31, pp. 673, 677. * * *"
It is stated further in 38 Am. Jur., supra, sec. 37, at p. 683:
"Persons who are known to be deficient in mind or body, or who are young and inexperienced, are entitled to a degree of care proportioned to their incapacity to protect themselves. They are not to be accorded the same treatment as persons of mature years and of sound mentality. The greater the disability, the greater is the degree of care required. It is a principle of law, as well as of natural justice, that greater consideration and care are due to persons known to be unable to take care of themselves than to those who are fully able to do so. * * *"
*38 And, at p. 685, sec. 40, it is stated:
"* * * More care must be exercised toward children than toward persons of mature years. Children of tender years and youthful persons generally are entitled to care proportioned to their inability to foresee and avoid the perils that they may encounter, as well as to the superior knowledge of persons who come into contact with them. The duty to avoid doing them an injury increases with their inability to protect themselves, and with their childish indiscretions, instincts, and impulses. * * *"
We are of the opinion that defendant might well have anticipated that children of early years are likely to become highly emotional and considerably over-active while they are enjoying the thrills and excitement of an amusement park and that they would move about and become physically active, without the foresight and perception of possible danger that would be expected of an adult or a mature person. In light of this situation and considering the reasonable apprehension of the unpredictable proclivities of children of tender years, we perceive that the trier of facts should consider these circumstances in resolving the question of defendant's proper use of care to protect patrons from possible danger present in the use for which the invitation was offered. Whether the existence of the tree at a point close to the train track in the matter sub judice posed a possible threat of danger to passengers of the train which was foreseeable by defendant, and for which some safeguard or warning should have been given, was a factual question of reasonableness to be measured by the jury under the circumstances of the case.
Mr. Justice Garrison, speaking for the Court of Errors and Appeals in the case of Kaufman v. Bush, 69 N.J.L. 645 (1903), stated at p. 648:
"The age of the plaintiff, while it does not per se alter the rule by which the negligence of the driver is to be gauged, is a circumstance to be taken into consideration in measuring the sort of care he was exercising and in determining what inferences should be drawn from the other facts respecting the accident." *39 Cf. Hellstern v. Smelowitz, 17 N.J. Super. 366 (App. Div. 1952); Frear v. Manchester Traction, Light & Power Co., 83 N.H. 64, 139 A. 86, 61 A.L.R. 1280; Trussell v. Morris County Traction Co., 79 N.J.L. 533 (E. & A. 1910).
As to miniature railways or cars, in Saunders v. Pierce, 107 Conn. 735, 139 A. 690 (Sup. Ct. Err. 1928), where a woman was injured while operating an amusement device known as a "Custer car," which was a small four-wheeled device resembling a miniature automobile propelled by electricity, it was held that the defendants were bound to exercise reasonable care in seeing that the device was reasonably safe for those riding in and operating the same, and also in giving all of those not familiar with its operation adequate instructions in the method of operating and steering the car, and, under this view, the jury might reasonably have found that the failure of the defendants to exercise such reasonable care was due to either or both of these causes, and that the accident was one which the defendants might reasonably have anticipated and guarded against.
It was not incumbent upon plaintiffs to prove a standard of construction or installation and a deviation therefrom in order to prevail. This action is one grounded in negligence. Construction in accordance with a standard practice or deviation therefrom is, in our opinion, merely one indication of absence or presence of elements tending to establish negligence on the part of the owner of the premises. Certainly, if there had been proof that it was standard construction to build the tracks within the distance of the tree in question, the defendant could not exculpate itself from liability if the proofs indicated that such distance was not sufficient to avoid injury to its patrons.
We now proceed to a consideration of the court's exclusion of plaintiffs' reading of certain answers to questions propounded of defendant's agent on deposition. The deponent was the supervisor of the installation of defendant's amusement device and was defendant's agent at the time the deposition was taken. Questions objected to relate to the *40 reasons for the installation of the track in the manner it was done, and the basis of the objection was that it called for deponent's expert opinion. The objections were sustained by the trial court.
The pertinent rule relating to the use of depositions is Rule 3:26-4, which provides, in part:
"At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence, may be used in accordance with any one of the following provisions:
(a) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
(b) The deposition of a party or of any one who at the time of taking the deposition was an officer, director, or managing or authorized agent of a public or private corporation, partnership, or association which is a party may be used by an adverse party for any purpose."
We are of the opinion that this rule clearly makes it proper for a party to offer the contents of the deposition of an adverse party for any purpose. This view was followed by our court in Hirschberg v. Glattly, 10 N.J. Super. 199, 204 (App. Div. 1950).
The deposition contained a statement that a warning of danger was unnecessary. The trial court later, in granting defendant's motion, indicated that there was evidence in the plaintiffs' case that a warning of danger was unnecessary. We conclude that the court presumed that plaintiffs' reading of the adverse party's deposition made him plaintiffs' witness. This matter has been determined to the contrary.
Rule 3:26-6 provides:
"A party shall not be deemed to make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, but this shall not apply to the use by an adverse party of a deposition as described in paragraph (b) of Rule 3:26-4. At the trial or hearing any party may rebut any relevant evidence contained in a *41 deposition whether introduced by him or by any other party." (Italics ours.)
See Hirschberg v. Glattly, supra, p. 205.
We perceive no error in the trial court's refusal to permit Mr. Fromer to answer questions propounded of him on the ground that he was not a qualified expert. As stated in Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 141 (1950):
"The qualifications of experts are left to the discretion of the trial court and the decision is conclusive unless clearly shown to be erroneous as a matter of law. (And cases cited therein.)

* * * * * * * *
* * * The true test of admissibility of such testimony is not whether the subject matter is common or uncommon or whether many persons or few have knowledge of the matter; but it is whether the witnesses offered as experts have peculiar knowledge or experience not common to the world which renders their opinions founded on such knowledge or experience any aid to the court or jury in determining the questions at issue. Rogers, Expert Testimony (3d Ed., 1941), Sec. 31. Taylor v. Town of Monroe, 43 Conn. 36 (1875).
Cf. Coll v. Bernstein, 14 N.J. Super. 71, 77 (App. Div. 1951); Leider v. Pitock, 15 N.J. Super. 592, 594 (App. Div. 1951).
It appears from the record before us that Mr. Fromer operated a small amusement park for three years and assisted in laying a miniature railroad track. His formal education consisted of a high school education and one year of college training. We conclude that under the circumstances the trial court's act of excluding him as an expert on miniature railroads was not an abuse of discretion; that the record does not show him to be possessed of peculiar knowledge or experience uncommon to the world forming the foundation for a qualified expert opinion on the matters presented to him.
Plaintiffs objected to the admissibility of a photograph offered by the defendant purporting to depict the scene of the accident and the approximate circumstances attendant thereto. The photograph was objected to on the basis that *42 it did not accurately represent the true situation; that it was posed and that it was taken approximately two years after the accident occurred.
Our courts have consistently held that to be admissible a photograph must truly represent the conditions present at the time of the incident in question and that it must be verified by someone qualified by personal observation to signify the authentic reproduction. Ellis v. Rosenberg, 15 N.J. Misc. 37 (Sup. Ct. 1936); Kellam v. Akers Motor Lines, Inc., 133 N.J.L. 1, 3 (E. & A. 1945); Parisi v. Carl W. Bush Co., 4 N.J. Super. 472, 475 (App. Div. 1949); Barnhart v. United Automobile, etc., Local 669, 12 N.J. Super. 147, 157 (App. Div. 1951). The photograph in question was taken approximately two years after the accident in question; the actor posing for the picture does not occupy the seat in question; the train is not in motion and in general appearance looks so entirely different from the photograph offered in evidence by plaintiffs purporting to show the same area, as to cause serious question as to its authenticity. We are of the opinion that as a prerequisite to admissibility the photograph should have been authenticated by a qualified observer definitely establishing the true reproduction of the conditions existing at the time of the accident.
The court erred in refusing to permit the plaintiff Raymond Garafola to testify, on rebuttal, as to whether there was any "sway" to the train when rounding the curve in question. In rejecting the testimony the court stated that there was no testimony "in the defendant's case that the train did not sway." But there was such testimony, as will appear from the following interrogation on cross-examination of the defendant's general superintendent, under whose supervision the railway was laid out:
"Q.  on the passengers? And when this train goes around that curve at 15 miles an hour, it always swivels to the left? A. No. It is perfectly straight.
Q. It does not sway at all? A. No, it does not.
*43 Q. Not an inch? A. No, not a half an inch.
Q. Didn't it sway on the springs  A. No.
Q.  when you  you are the man who constructed and laid the tracks, aren't you? A. That is right."
In view of the importance of the factor of "sway" in the operation of the train in the vicinity of the tree, the court should have admitted the challenged testimony and it was prejudicial error to exclude it. Singer v. Central Railroad of New Jersey, 121 N.J.L. 121 (E. & A. 1938); Motus v. Ward, 6 N.J. Super. 166 (App. Div. 1950).
Considering the plaintiffs' final contention of error in the trial court's exclusion of testimony by Mr. Garafola concerning the amount of damages sustained by reason of hospital and medical expenses incurred as a result of his son's injuries, we are of the opinion that this evidence was properly excluded. There was no proper proof of the reasonableness of the charges made for services rendered, and in the absence thereof it is improper to admit testimony as to the amount thereof.
The judgment is reversed and the matter remanded to the Bergen County Court for a trial de novo.