[1] Reported in 149 N. W. 20.
[2] April, 1914, term calendar. *Page 164 
Action against defendants Dieudonne as partners and defendant Nyquist as their alleged employee, to recover damages for personal injuries claimed to have been caused by the latter's negligence while plaintiff was in a shop conducted under the firm name of E. Dieudonne Son. A verdict was returned against all defendants, and *Page 165 
each of them appealed from an order denying their applications for judgment notwithstanding or for a new trial.
The accident occurred in the village of Janesville, in the afternoon of September 5, 1912. It is undisputed that in 1885 defendant Emil Dieudonne, to whom we will hereafter refer by his Christian name, opened a farm implement business on his own account and under his name, in the village mentioned, and so continued to operate it until 1900, in which year his son Eugene became of age and was associated with him therein, the firm thereafter being so conducted for the period of five years, under the name of E. Dieudonne Son. Defendants claim that in 1905 this partnership was dissolved by Emil's withdrawal, the son continuing the business alone, and that since then the father has had no interest in the same, except as a creditor, and has taken no part in its management. It was conducted at all times in a building, owned by Emil but rented to Eugene after the dissolution, which fronted on the graded and paved main street of the village, the main entrance opening upon the sidewalk. The building was 42 feet wide and 90 feet deep, and situated in the center of the block, on a lot 140 feet deep, extending back to a 20-foot unpaved, ungraded, littered alley bisecting the block. Up to 1910 it had been used entirely for the sale and exhibition of farm machinery, having an office in front and a board floor, on a level with the sidewalk, running back its entire length. After the alleged dissolution and prior to 1910 the business of repairing automobiles was conducted in the rear part, and in the latter year all the board floor except about 37 feet in front was taken out, the level lowered two and one-half feet, and a cement floor substituted. The rise between the two floors was not boarded up and there were no permanent steps connecting them; a movable step, consisting of boxes being used for this purpose and being shoved under the board floor when space was needed. The area of the cement floor was divided into two compartments, one used as a garage and the other as a repair shop, with an entrance through a door opening to the rear. Nothing was kept for sale in these compartments, nor was either fitted up for the reception of customers, and the workmen there employed were engaged solely in repairing automobiles. Adjoining the *Page 166 
office articles were kept for exhibition, including repairs for machinery.
On the day of the accident plaintiff, a farmer residing near Janesville, entered the building through the rear door, for the purpose of exchanging some mower repairs he had obtained on the previous day. Defendant Nyquist, an employee in the repair shop, was then engaged in the garage in repairing a defective automobile belonging to defendant Eugene, and, as plaintiff was about to enter, he backed the machine out through the door, noticing plaintiff and another man enter just after he came out. Stopping the automobile outside the entrance, but leaving the motor running very fast and without applying the brakes, on the supposition that the machine was not in gear, but not in fact knowing where the defect was, he proceeded with his work. He then stepped into the car and as he did so it started to move forward and, not being under control, ran into the garage. Plaintiff, who at this time was passing through the rear of the building in order to reach the office, was struck by the machine when near the temporary step and injured. He was familiar with the premises and their uses, and he and others had frequently entered the building through the rear for the purpose of transacting business in the front.
1. Defendants insist that plaintiff was a mere licensee, to whom no duty was owing except to refrain from wilfully injuring him while on the premises, and hence in no event is entitled to recover against any of them. We have set out the location and details with reference to the construction and use of the building, because these matters were elaborately covered by the testimony given on the trial and are also relied upon to establish the point mentioned. But it clearly appears that the building was such as is ordinarily used in the villages of the state for exhibition of farm implements and automobile repairs, and, taking into consideration the business transacted in it, its location, and the use made by patrons of the rear door, we cannot say that a customer like plaintiff, when entering from the rear, would have no better standing than a bare licensee. The fact that the alley was unimproved and strewn with rubbish such as is usually found in such places is not of importance; for farmers, who of necessity are often confronted with such conditions, would naturally be frequent *Page 167 
customers of the business conducted in the front of the building, and the persons in charge must have known that the condition of the alley would not, and did not, prevent them from using the rear entrance when more convenient than the front. Plaintiff was entitled to the rights of one who comes upon the premises of another by invitation. We find no reversible error in the instructions in this regard.
2. The further claims that, as a matter of law, defendant Nyquist's negligence was not established and that plaintiff should be held to have been negligent, are not sustained. We deem the recital of the facts stated concerning the manner in which the automobile was handled a sufficient refutation of the first, and the question of plaintiff's negligence was so plainly for the jury that the second does not merit discussion.
3. Defendants also contend that, because the Dieudonnes are sued as partners, unless such relationship was established no recovery can be sustained against any of defendants. Tort feasors, however, are jointly and severally liable, and G. S. 1913, § 7897, provides that "when two or more are sued as joint defendants, and the plaintiff fails to prove a joint cause of action against all, judgment may be given against those as to whom the cause of action is proved." See Miles v. Wann,27 Minn. 56, 6 N. W. 56; Huot v. Wise, 27 Minn. 68, 6 N. W. 425; Fryklund v. Great Northern Ry. Co. 101 Minn. 37, 111 N. W. 727.
4. The complaint, in addition to alleging that defendants Dieudonne were copartners, charged that they conducted their business in the building wherein the accident occurred, and had done so for a long time previous thereto, inviting plaintiff to come there and trade, and that plaintiff had for a long time been a customer, entering their place of business under such invitation for the purpose of trading; and defendants admitted that, subsequently to the alleged dissolution of the partnership, the business was continued under the same firm name, this being permitted by Emil in order to give his son credit, and that with his knowledge and without protest advertisements over the name "E. Dieudonne Son" were thereafter published in a newspaper of the village, soliciting patronage. Furthermore, it appeared that plaintiff had, for a number of years both before and after the dissolution, *Page 168 
been a customer of the business, and no proof was made that he had notice or knowledge of the dissolution. But the court, nevertheless, held and charged that plaintiff could recover only in case an actual partnership relation existed, and defendants insisted that the evidence does not warrant a finding of such, and further that, this being an action in tort, the instruction given by the court was correct. We sustain defendants' first claim and hold the evidence insufficient to establish a partnership. This conclusion necessitates consideration of the second contention as to the correctness of the instruction. It has long been settled that a merchant, who keeps his place of business open to customers and invites and permits them to enter therein to trade, owes them the duty of exercising reasonable care to keep the premises safe for their ingress, progress and egress. Corrigan v. Elsinger,81 Minn. 42, 83 N. W. 492. Under this rule, if the alleged partnership had been established, Emil's liability would be clear. The rule, however, has been further developed, and in the case cited it was held that this duty was nondelegable and could not be shifted upon a contractor engaged in making repairs, whose negligence caused the accident. In Mastad v. Swedish Brethren, 83 Minn. 40, 85 N. W. 913, 53 L.R.A. 803,85 Am. St. 446, it was held that a person having the management and control of a public place of amusement, which he invited the public to attend for pay, was bound to exercise reasonable care to protect his patrons from assaults and insults from one becoming intoxicated with liquor which he there sold him. In Thompson v. Lowell, L. H. St. Ry. Co.170 Mass. 577, 49 N. E. 913, 40 L.R.A. 345, 64 Am. St. 323, a street railway company was held liable for an injury to a spectator, by reason of the negligent management of a stage exhibition at a pleasure resort owned by it and on its line, though the exhibition was conducted exclusively by an independent contract or hired by the company for that purpose, and though the latter was not interested in the performance or its management, except insofar as patrons were induced, through its advertisements, to use its line in reaching the place of amusement. See also Richmond M. Ry. Co. v. Moore, 94 Va. 493, 27 S. E. 70,37 L.R.A. 258. Considering the rule as applied in the cases cited, to which many others of like effect might be added, what is its underlying motive ? Does liability result *Page 169 
because of ownership or actual occupation or management, or does it flow from the invitation extended to the public by one who has clothed himself with all indicia of the right to extend the same, coupled with apparent ownership or control ? Defendants rely largely upon Smith v. Bailey, L. R. 2 Q. B. (1891) 403, and certain text books-approving it, which criticise and refuse to follow Stables v. Ely, 1 Carr P. 614, wherein it appears to have been held that one who allowed his cart to go out with his name on it held himself out to the world as liable for injuries occasioned by the negligence of anyone driving it. We agree that both the Smith case and the text authorities cited are sound in principle, but think they are not decisive of the present inquiry, if at all in point. In both the Smith and the Stables cases the accident happened on the highway, without the element of invitation and the duties incident thereto. In cases like the present one the gist of liability lies in the invitation, when extended under the circumstances indicated in the question. It does not rest wholly in estoppel but upon the assumption of a definite status — of control or ownership — with reference to the property, and a specific relation — involved in the invitation — towards the person injured; neither of which the defendants here attempt to deny. Nor, as we have seen, does it depend upon the doctrine of respondeat superior. See also Pollock, Torts (8th ed.) 74, 75. Where, as in this case, there is a holding out of a partnership relation concerning the control of a place where business is transacted, and an invitation to patronize extended under such circumstances of publicity as to warrant the inference that a person, subsequently injured therein through failure to exercise due care for his safety, must have had the right to believe that those extending the invitation were in control of the premises, liability results without regard to the existence of the partnership relation. Any other rule would enable those who have allowed invitations to be extended to the public in their names to escape liability for nonperformance of the duties they have thereby assumed by setting up ownership or control of the place in some irresponsible person.
The finding of the jury as to negligence and damages, when considered in connection with the undisputed facts, establishes liability on the part of defendant Emil, irrespective of the actual existence of *Page 170 
the alleged copartnership, and there is nothing in the assignments of error showing sufficient prejudice to the rights of defendants to render this conclusion unjust. Hence the order is affirmed.