MARION D. WRIGHT, APPELLANT, V. SALVATION ARMY, APPELLEE.

FILED JULY 12, 1933. No. 28578.

*A. M. Morrissey* and *James H. Hanley,* for appellant.

*Emmet L. Murphy* and *Harry W. Shackelford, contra.*

Heard before GOSS, C. J., EBERLY, DAY and PAINE, JJ., and BEGLEY, LANDIS and MEYER, District Judges.

BEGLEY, District Judge.

This is an action brought by Marion D. Wright against the Salvation Army to recover damages for personal injuries, alleged to have been sustained by the plaintiff through the negligence of the defendant when he fell through an unguarded elevator shaft in the four-story brick building owned, operated and controlled by defendant in the city of Omaha.

The answer of the defendant admitted its corporate existence; its ownership of the building; alleged that it is a religious and charitable corporation, and charged defendant with contributory negligence.

At the close of the testimony in the trial court, the defendant filed a motion for a directed verdict on the ground that defendant is exclusively a religious and charitable institution and that at the time of the injury the plaintiff was a direct participant in and beneficiary of the defendant's charitable activities; that the plaintiff was guilty of contributory negligence which was, as a matter of law, more than slight as compared with any negligence of the defendant, and that the plaintiff was not an invitee but a mere trespasser on the premises of the defendant, which motion was overruled, and the jury

returned a verdict for the plaintiff for fifteen hundred dollars.

A motion for a new trial was filed, and the court thereafter, being of the opinion that it erred in overruling the motion of the defendant for a dismissal of the cause of action or a directed verdict on its own motion vacated said judgment, and the verdict of the jury was set aside, and the court then sustained the motion of the defendant, made at the close of all of the testimony. The cause was dismissed with prejudice, from which order and judgment the plaintiff has appealed.

The evidence discloses that the defendant, a religious and charitable corporation, was the owner of a four-story brick building located at the northeast corner of Thirteenth street and Capitol avenue, in the city of Omaha. The defendant maintained a workingmen's hotel in said building, and said hotel lobby, together with its private office and certain storage rooms in the conduct of its charitable and religious work, were on the ground floor. The building faced the west, where a door opened into a hall or vestibule next to the private office and then a private passageway led toward the east where a rag room was situated where the defendant gathered rags for sale and also paper for baling in a baling room. To the north of this passageway and west of the rag room, in a small compartment walled on the east and west sides, was a hydraulic elevator, used for hoisting material from the basement to the first floor. This elevator stood plumb with the floor and had no guard or side rails.

The plaintiff was a rug weaver in the city of Omaha, and in September, 1931, went to the defendant's place of business and arranged to purchase old clothing and rags to use in his rug weaving business. Commandant Case, in charge of the defendant's business, took the plaintiff to the back part of the building on the first floor, in what is called the rag room, and told him to select such material as he desired. The plaintiff, desiring to select certain rags, asked permission to select the same

himself, and it was agreed that he was to do so and have them weighed by the clerk in his office and pay the clerk five cents a pound therefor. He was invited by Commandant Case to come back again and make further selections and pay accordingly. This he did on several occasions, always being escorted to the rag room by the commandant or other employees by the south passageway. On October 14, 1931, the plaintiff returned for more rags and, instead of going to the office to notify the commandant, entered the building and went to the back part thereof, but instead of going through the straight passageway, he walked around the elevator partition to the north, then entered the elevator compartment and came back again over to the elevator to the south, then east and entered the rag room immediately north. In going to the rag room, the plaintiff, after passing over the elevator, disconnected an electric light bulb and took the same to the rag room in order to secure better light. In returning from the rag room he took the same general direction as in coming in, and in passing through the elevator space he fell down the shaft from which the elevator had been removed to the basement by an employee. The part of the building in which the elevator and rag room and baling room were situated was not open to the public nor was the public permitted in that part of the building. There were signs displayed on the building about the elevator marked, "danger" and "elevator," and it is also shown that the elevator hoisting made a noise when it came from the first floor to the basement; that the attendant always shouted, "elevator up," and that there was a light in the basement which showed through the elevator shaft.

It is argued that the defendant, being an eleemosynary corporation, is not liable to the plaintiff, but the evidence shows that the plaintiff was not a recipient of the institution's charity but was dealing with the defendant for gain, and therefore the defendant was responsible for the negligence of its servants and agents as in cases of the

ordinary business corporation. 13 R. C. L. 948, sec. 12; *Marble v. Nicholas Senn Hospital Ass'n,* 102 Neb. 343.

It is undisputed that the defendant was not, at the time plaintiff was injured, in the business of selling rags at retail and the portions of the building which included the rag and baling rooms and the elevator shaft were not open to the public. Plaintiff testified that, on the occasion when he was given permission to go to the rag room and pick out the rags he wished to purchase, he was personally conducted from the office back to the rag room by Commandant Case. He admits that on that occasion Commandant Case conducted him through the passageway or opening south of the west wall of the elevator corridor. He does not claim that he had ever been given permission to cross the elevator or to use any other route in going to and from the rag room, yet on the date in question he not only deviated from that route, and had gone around to the shipping room and across the elevator, but that at the time he fell into the elevator shaft, he was attempting to leave the building through the north door. He claims that the reason he deviated from the designated route and across the elevator in going into the rag room was that there were boxes obstructing the south passageway when he went in, but he does not know whether the same was obstructed when he left the rag room and started to go through the north door and walk into the lighted elevator shaft. His reason for taking that route also was that it was more light that way than any other way because he had, without permission, removed the light in the room west of the elevator and taken it with him to the rag room.

This case does not come within the ordinary rule applicable to store-keepers where the merchant, in opening his premises to the public, impliedly invites the public to come into the premises to inspect and purchase the goods. In this case, the plaintiff was the only invitee and his invitation was limited. He had never been either invited or given permission to wander at will about the defend-

ant's premises, nor had he ever been told that he could either enter or leave through the north doorway. He had been conducted from the front office to the rag room by a fixed route and had he followed that route on this occasion he would not have been hurt. His injury occurred when he exceeded his invitation and attempted to go where he had no permission to go.

In *Wilkinson v. Webb-Carter Shoe Co.*, 57 S. Dak. 458, the court said: "In so far as the occupancy of the hall is concerned, plaintiff was in the position of an invitee, but the liability of the owner of the premises to an invitee who enters thereon is only coextensive with his invitation, and, when the limits of the invitation are exceeded, his duty to the invitee is only that of abstaining from acts wilfully injurious. *Gavin v. O'Connor*, 99 N. J. Law, 162, 30 A. L. R. 1383. Plaintiff was an invitee in the hall, but he sustained no injuries while remaining in the hall. It was when he went beyond the hall that he was injured. Carter, the owner of the premises, was required to abstain from wilfully doing anything that was injurious to one lawfully using the hall. But maintaining a doorway leading to the elevator without having the same labeled or any warning notice on or near the door was not doing anything wilfully injurious to those using the hall."

In *Collins v. Sprague's Benson Pharmacy*, 124 Neb. 210, the court said: "Mere permission of an owner, allowing customers to enter and use a certain portion of his premises, is indicative of a license merely, and not of an invitation. The law does not penalize good nature, or indifference, nor does permission ripen into right."

If the south passageway was either wholly or partly blocked when plaintiff went into the building, this did not constitute an implied invitation for him to back up and use some other route. Rather it was an implied revocation of his permission and it was his duty to go to the office and secure from some one in authority, either the removal of the obstruction or permission to use some other route.

On the question of plaintiff's contributory negligence, it is admitted that on both the north and south ends of the west wall of the elevator shaft there were conspicuous signs reading, "Danger, elevator." If the plaintiff had used the south passageway he would have to pass directly by one of these signs. If he went around the north passageway and across the elevator he would have to pass both of them. The elevator itself was a warning of danger. When moved, it made a noise loud enough to be heard in distant parts of the building, and while in the rag room the plaintiff was within two or three feet of the elevator. The employee who moved the elevator from the first floor to the basement, immediately before the accident, called out in a loud voice, "elevator." There were on the east wall of the building, south of the elevator, four windows which would direct at least some light on the elevator and shaft. The light in the basement was burning and, according to the testimony, illuminated the elevator shaft. The plaintiff disregarded danger signs that he should have seen; walked from the rag room out into a lighted room and, without paying the slightest attention to his surroundings or taking any precautions for his own safety, walked into an illuminated elevator shaft which he could plainly have seen, and did so immediately after a warning had been given, which he could have heard had he listened, that the elevator was coming down.

Under such circumstances the plaintiff was guilty of gross negligence and the court did not err in directing a verdict upon this ground. *Sodomka v. Cudahy Packing Co.*, 101 Neb. 446; *Rice v. Goodspeed Real Estate Co.*, 254 Mich. 49.

The judgment of the district court is therefore

AFFIRMED.