CHESTER MALOLEPSZY, APPELLEE, V. CENTRAL MARKET, INC., APPELLANT: WALTER E. HARKERT, APPELLEE.

7 N. W. (2d) 74

FILED DECEMBER 18, 1942. No. 31423.

*Gaines & Shoemaker* and *H. A. Palmer,* for appellant.

*Gross & Crawford* and *Harry L. Welch, contra.*

Heard before SIMMONS, C. J., ROSE, EBERLY, PAINE, CARTER, MESSMORE and YEAGER, JJ.

MESSMORE, J.

The plaintiff brings this action against the Central Market, a corporation, for personal injuries alleged to have been sustained by him in falling down an elevator shaft on the premises of defendant Central Market (hereinafter referred to as defendant).

Plaintiff's petition alleges that on October 27, 1940, at about 10:15 a. m., as an employee of Walter E. Harkert's restaurant, located at 1619 Farnam street in Omaha, Nebraska, he was directed by the manager to go to the Central Market to purchase meat; that he entered the business establishment of Central Market, located at 1608 Harney street, through a rear door, which he alleges was one of the regular and customary places of entering defendant's place of business; that he was an invitee on defendant's premises, and in walking from the rear toward the front of the store he walked into an open elevator shaft located 20 or 30 feet south of the rear entrance of the market and fell into the shaft, injuring himself, detailing his injuries; that the front of the Central Market was closed, but that it was the regular and customary occurrence for the plaintiff and his employers to enter the defendant's place of business from the rear and to proceed to the wholesale meat department for the purpose of purchasing meat; that the elevator shaft was poorly lighted and plaintiff by reason thereof failed to see the shaft. He further alleges that there was a wooden gate which ordinarily guards the opening of the shaft, not automatically operated; that at the time he fell this gate was up and not in its regular position; that the elevator was on the second floor and its gate

was not lowered to its regular position to keep persons, and particularly this plaintiff, from walking into the pit. Plaintiff charges the defendant, its agents and servants with negligence in failing to keep its premises in the vicinity of the elevator properly and sufficiently lighted; in failing to place the safety gate across the elevator shaft and pit when the elevator was not on the floor level; in moving the elevator from the floor level to the floor above; in failing to prevent persons, and particularly this plaintiff, from walking into the elevator pit; in failing to warn this plaintiff and other persons rightfully on the premises that the elevator shaft was open and unprotected; and in maintaining a trap and pitfall without properly lighting and guarding it to prevent persons, and particularly this plaintiff, from falling into it.

Defendant Central Market admits its corporate capacity and that plaintiff was an employee of Walter E. Harkert; denies generally the other allegations of the petition, and for further answer denies that the rear door was a regular and customary place of entering its place of business; alleges that plaintiff was not an invitee under the circumstances, and that the door through which he entered was not for the use of customers or the public, but that such entrance opened into a loading platform and into an elevator room, used exclusively by defendant in its business, and not in furtherance of the sale of its merchandise, either wholesale or retail, and was separate and apart from that part of the business used by the defendant for transacting business with its customers; that on Sunday, October 27, 1940, the store was closed, and at no time, either when the store was closed or open for business, was said entrance used by the customers or the public to gain entrance either to the retail or wholesale department; alleges negligence on the part of the plaintiff, and that at the time of the accident he was a trespasser on defendant's premises.

The answer of defendant Harkert prays that he be subrogated to the rights of the plaintiff to the extent of $546.55, and that upon judgment in favor of plaintiff this judgment

be paid by reason of the rights of subrogation set forth.

The Central Market operates a retail grocery and wholesale and retail meat market in connection therewith, and is directly across the alley from Harkert's restaurant. At about 10 o'clock on the morning of the accident, the plaintiff, dressed in his restaurant uniform, reported for duty and was directed by the manager to go to the Central Market to obtain some sausage patties. The wholesale meat department of the Central Market is located in the northwest corner of the building and is partitioned off from the retail business. The entrance to the wholesale meat department is located at the west end of the building, and the entrance to the loading dock or elevator room, the scene of the accident, was in the east end of the building. There is a room used for storage adjoining the wholesale meat department in the back of the store. No business is transacted in this room. Through this back room to the northeast corner of the building is an elevator room which is partitioned off on its east and west side, and there is a door leading into the elevator room from the south and an iron door to the north, which leads into the alley. The west door into the wholesale meat department is about a foot from the level of the ground. The east door, through which the plaintiff proceeded, is a sliding door that slides up and down and is built up from a platform.

On occasions, certain customers of the Central Market were privileged to obtain merchandise on a Sunday either by calling or coming to the store. This merchandise had been furnished the Harkert restaurant on a few occasions on Sunday. When employees of the restaurant went to the Central Market to procure merchandise they would go to the west door and would rattle it in an attempt to attract attention in the market. Failing on one occasion, an employee went to the front door and was admitted. There is no evidence that any Harkert employee had ever entered the east door into the elevator room on any other occasion than the morning in question, when a colored man, who was picking up some trash to haul in his own truck, and who

was close to the east door, observed the plaintiff at or near the west door and called to him to come around and call the elevator man. This caused the plaintiff to enter the east door from the loading platform and proceed about 20 feet, resulting in his falling into the elevator shaft and injuring himself; the elevator had been taken to the second floor; the picket gate was not in front of the elevator shaft; the gate on the other side being down, the plaintiff thought the outer, protecting gate was the gate in front of the elevator shaft as he walked toward it. There was a light in the room, one in the adjoining room, and a light in the elevator which had been taken to the second floor. Upon hearing the plaintiff call for help, the colored man went to his rescue. Subsequently, the manager of Harkert's obtained the sausage by entering the same door of the Central Market through which the plaintiff went.

The case was submitted to a jury and a verdict rendered in favor of plaintiff in the sum of $5,583.77. From this vedict and judgment thereon and the overruling of a motion for a new trial, defendant Central Market appeals to this court.

We have set forth the substantial and material facts. At the close of all the evidence defendant moved for a directed verdict which was denied by the court. In this connection the rule is:

"A motion for a directed verdict must, for the purpose of a decision thereon, be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and said party is entitled to have every controverted fact resolved in his favor, and to have the benefit of every inference that can reasonably be deduced from the facts in evidence." *Moncrief v. Interstate Transit Lines,* 129 Neb. 168, 261 N. W. 163.

The question is whether or not the court erred in overruling defendant's motion to dismiss the action or to instruct the jury in favor of the defendant, made at the close of the plaintiff's evidence.

While the factual situation in cases of this kind vary to a considerable extent, we believe, under the circumstances of this case and from a review of the record, that the holding in *Wright v. Salvation Army*, 125 Neb. 216, 249 N. W. 549, is applicable. In that case this court held:

"The liability of the owner of the premises to an invitee who enters thereon is only coextensive with the invitation, and when the limits of the invitation are exceeded the invitation ceases, and the duty of the owner is only that of abstaining from acts wilfully injurious."

And in *Collins v. Sprague's Benson Pharmacy*, 124 Neb. 210, 245 N. W. 602, it was held:

"The duty which a merchant owes his customers, with respect to the safety of the premises, applies particularly to that part of the premises which is appointed for the transaction of his business.

"Where one, at his own request, and solely for his personal pleasure, convenience, or benefit, enters upon the private portion of the business premises of another, with his consent, but without an invitation, he is a bare licensee in such portion of the premises not open to the public, and the occupier of the premises owes no duty to him, save to refrain from inflicting injury upon him."

From the record it is clear that the purpose of the east door into the Central Market was to take out and bring in merchandise for the benefit of the market itself. It was a loading and unloading place, and not a part of the premises wherein merchandise was sold, or where the public was invited to enter for the purpose of purchasing meat, either retail or wholesale. It is partitioned off from the business part of the premises, and there is not a scintilla of evidence that on this or any other occasion plaintiff was invited to enter the Central Market through the east door. The burden is on the plaintiff to show that he was invited on the premises for the purpose of transacting business. and he must carry this burden by a preponderance of the evidence. He has failed to show such fact. All of the evidence is clear that, in obtaining meat or other merchan-

dise on occasions of emergency, the customer so obtaining it went to the front door of the Central Market or to the west door leading into the wholesale meat department.

We have taken cognizance of the principle of law, cited by the plaintiff from Restatement, Torts (Negligence), sec. 343 b., but find that in an analysis thereof, together with other authorities cited by the plaintiff, the facts in the instant case do not meet the situation as set forth in such authorities. We will not unnecessarily lengthen the opinion by setting forth plaintiff's authorities in this respect.

The colored man, who called to the plaintiff to come around to the east door and call the elevator man, had no authority, express or implied, to invite any person into the Central Market for the purpose of transacting business. He worked independently and separately and for his own benefit, hauling débris from this market and from other places. The facts and circumstances are directly opposed to the plaintiff's contention that he was an invitee.

We are obligated to conclude that the motion of defendant Central Market for a directed verdict at the close of the evidence should have been sustained. In view of this conclusion, it is unnecessary to consider other assignments of error.

The judgment on the verdict is reversed and the cause dismissed.

REVERSED AND DISMISSED.


PAINE, J., dissenting.

I respectfully dissent from the opinion adopted in this case. In my opinion, the questions involved were submitted to the jury under proper instructions, and the verdict of $5,583.77 was warranted by pleadings and evidence, and the judgment entered thereon should be affirmed.

The facts, as I understand them, show that the plaintiff at the time of the accident was a healthy, able-bodied man, 29 years of age, having a life expectancy of 36.03 years. He had been employed for four years by Harkert. The defendant, Central Market, Inc., operates a large retail gro-

cery store, and in connection therewith operates a wholesale and retail meat market, which is directly across the alley from the Harkert establishment. Plaintiff had often been sent across the alley to the Central Market to get meat, which his employer bought at wholesale prices, the same as the better hotels and restaurants, but until the day of the accident, October 27, 1940, he had never been sent for meat on Sunday.

The front of the Central Market was closed on Sunday, but it was a regular and customary occurrence for Harkert's and certain hotels and restaurants to purchase meat at wholesale at a door opening on the alley. At 10 o'clock in the forenoon plaintiff was sent across the alley to purchase meat for his employer. He rattled the door to the wholesale meat department of defendant's place of business, but failed to draw the attention of any one inside.

Farther down the alley, at a rear door opening onto a dock, F. L. Hogan, who was engaged in the trucking business, operating his own truck, hauling rubbish and trash from the defendant's place of business, was breaking up some boxes and bundling them up. The plaintiff thought that Hogan was a Central Market man, and Hogan called to him to come down there and go inside where he was and call the elevator man. The plaintiff entered at this second alley door and started to go to the elevator shaft to call the elevator man. The place was very dimly lighted, and looking straight ahead he saw a slat gate in front of him, which he supposed closed the elevator shaft, and walked towards it to call up to the elevator man, who was on the second floor, but instead the slat gate on the side towards the plaintiff had not worked properly and had stuck and not fallen down as the elevator went up, and plaintiff walked directly into the unlighted elevator shaft, which he could not see, and fell 15 feet to the bottom of the pit, causing fractures of several vertebrae and other serious injuries. The light was just bright enough so he could see the slats of the gate on the other side, but the floor was dark, and because the gate had failed to come down by gravity on his side, as it should have done, he walked right into the pit.

Plaintiff alleges that his injury was caused by reason of the carelessness and negligence of the defendant in the following particulars: (a) Failing to keep its premises in the vicinity of the elevator properly and sufficiently lighted; (b) failing to place the safety gate across the open elevator shaft and pit when the elevator was not at the floor level; (c) moving the elevator from the floor level to the floor above and failing to lower the safety gate to prevent persons from walking into the open elevator pit; (d) failing to warn or caution plaintiff and other persons rightfully on the premises that the elevator pit and shaft were open and unprotected; (e) maintaining a trap and pitfall without properly lighting and guarding it to prevent persons from falling into it.

Raymond Mauck testified that he was 32 years old, and was manager of "Harkert's," where plaintiff worked, and had sent him to defendant's store that Sunday morning to get the sausage meat. After the accident, Mauck testified, he got the meat himself, going across the alley and in at the same back door, or dock entrance, which the plaintiff had used, then went straight across the elevator into the meat department and back the same way with the meat, both elevator gates being up at the time; that there were two employees of the defendant working in there at the time that he got the meat.

The trial court in instruction No. 5 correctly defined:

"An invitee is a person who enters or remains upon the premises in the possession of another after having been expressly or impliedly invited to do so, such as a person who enters a premises in the possession of another for the purpose of transacting some business with the possessor of the premises.

"You are further instructed that it is the duty of a person in possession of premises, in respect to an invitee or business customer, to keep his premises in a reasonably safe condition for the purpose for which they are intended to be used."

These instructions are supported by *Haley v. Deer*, 135 Neb. 459, 282 N. W. 389.

The defendant's position was set out in its motion to direct a verdict as a matter of law because "The plaintiff, at the time and place of this accident, was on the premises of the defendant as a trespasser, or at best as a mere licensee, to whom this defendant owed no duty except that of avoiding wilful and wanton negligence."

The defendant endeavors to sustain its position by citing *Collins v. Sprague's Benson Pharmacy*, 124 Neb. 210, 245 N. W. 602, where a person was injured in going to a toilet provided only for the use of store clerks, and was clearly a bare licensee, and offers no support under the facts in this case, for a licensee is one who is on the premises of another for his own interest or gratification. He is exercising a privilege solely for his own convenience or benefit. A licensee does not stand in any contractual relation with the owner of the premises, as a prospective purchaser does.

Here is a case more clearly in point, where a farmer was injured by an automobile being repaired and out of control, while he was passing through the rear portion of a village automobile repair and farm implement shop in order to transact business in the front, and it was held that the fact that he reached the place where he was injured by passing through a rubbish-strewn alley and the rear entrance of the building did not constitute him a bare licensee, so as to preclude him from invoking the rights of one upon premises by invitation, and a verdict in his favor was sustained. *Jewison v. Dieudonne*, 127 Minn. 163, 149 N. W. 20.

This matter is discussed in Restatement, Torts (Negligence), sec. 343, and is found on pages 938 to 943, from which we may briefly summarize as follows: There is only one particular in which the owner who holds his land open for business visitors is under a greater duty in respect to its physical condition than to a visit of a licensee. He has no financial interest in the entry of a gratuitous licensee, who is entitled to expect nothing more than an honest disclosure of the dangers known to the owner. On the other hand, the visit of a business visitor is, or may be, of finan-

cial benefit to the owner, and such a visitor is entitled to expect the owner will take reasonable care to discover the actual condition of the premises and either make them safe or warn him of dangerous conditions, so that he will have opportunity to decide intelligently whether or not to accept the invitation.

But the owner is subject to liability while the invitee is upon that part of the premises which the owner gives the other reason to believe that his presence is permitted or desired because of its connection with the business. In determining this area, the nature of the business to be transacted is of great importance.

The customer is a business visitor thereon, unless the owner exercises reasonable care to apprise him that the area of invitation is more narrowly restricted. If the owner should realize that either one of two doors might be taken by his business visitor to be the door to the business area, the visitor is entitled to the protection of a business visitor even though he enters the wrong door.

"Since the status of the other as a business visitor depends upon whether the possessor should have known that his visitor would be led to believe that a part of the premises are held open to him as a business visitor, the question is often one of fact and as such a matter for the jury, subject to the normal control which the court exercises over the jury's function in such matters." Restatement, Torts (Negligence), *supra.*

A case somewhat similar to the case at bar is that of *Chichas v. Foley Bros. Grocery Co.*, 73 Mont. 575, 236 Pac. 361. Defendant was engaged in the wholesale grocery business. A freight elevator ran from the basement to the second floor. Plaintiff, a retail grocer, was a steady customer. He drove his automobile to the rear entrance of defendant's building, stopped at a platform, and by means of a plank walked up on this platform about four feet from the ground, entered a door, and proceeded along a passageway, stored with merchandise, which was not well lighted, and in ignorance of the existence of an unguarded elevator shaft fell into it. It was held (236 Pac. 361) :

"An owner is liable to invitee, for injuries occasioned by unsafe condition of premises, if known to him and not to invitee, and which was negligently suffered to exist without timely notice. In action by invitee, for injuries sustained by falling through open elevator shaft maintained in defendants' building, contributory negligence of invitee *held* for jury." See, also, *Brett v. Century Petroleums, Inc.*, 302 Ill. App. 99, 23 N. E. (2d) 359; *Palmer v. Boston Penny Savings Bank*, 301 Mass. 540, 17 N. E. (2d) 899; *Rudolph v. Elder*, 105 Colo. 105, 95 Pac. (2d) 827; *Armour & Co. v. Rose*, 183 Ark. 413, 36 S. W. (2d) 70.

In conclusion, the defendant was selling meat on Sunday to wholesale customers, who must use the alley entrance for the front entrance was not open on Sunday. The plaintiff, being sent to buy meat for a regular wholesale customer, had a right to go there. It was a question then whether the plaintiff did what an ordinary man would have done under the circumstances, and if it was so dark that, while proceeding carefully, as directed, to call up to the elevator man, he fell into the pit, and all the facts having been submitted to the jury under proper instructions, in my opinion the verdict should stand, for that invitation to wholesale buyers to buy from the alley entrance on Sunday included all the necessary passageways in and out of the wholesale department.

CARTER, J., dissenting.

The record shows that it was a regular and customary occurrence for favored customers and their employees to enter the place of business of the Central Market from the rear for the purchase of meat. On Sundays, entrance was obtained by attracting attention at the rear if no door was unlocked. I agree with the majority that this constituted a business invitation and constituted such customers and their employees as business invitees. I cannot agree to the holding of the majority that the plaintiff was, as a matter of law, outside the scope of the invitation at the time of the accident.

Plaintiff went to the rear of the Central Market in re-

sponse to the extended business invitation to procure meat. Failing to attract attention at the first door which he found locked, he proceeded approximately forty feet east and entered an open door leading from the loading dock into the building. Plaintiff had never previously sought admission to the Central Market to obtain merchandise and was wholly unfamiliar with the inside arrangement of the building. Neither of the rear entrances were marked in any way, nor were there any signs forbidding entrance to customers. Much is said in the majority opinion on the fact that the east door was not an ordinary place of entrance. The same can be said of the west door. Neither was an ordinary or usual place of entrance for the purchasing public generally.

The scope of the invitation was not limited to any particular door or means of entrance. It invited the favored customers of the Central Market to come to the rear of the building, enter any open door or make their presence known to employees within, so that entry could be effected.

It seems clear to me that plaintiff did what any reasonable person would have done under the circumstances. If one door was locked and another open, it is the natural thing to enter the open door. The Central Market in extending the invitation was bound to anticipate what a reasonable and prudent person would do under the existing circumstances. It is at least a question for the jury to determine whether plaintiff acted reasonably under the circumstances in responding to the invitation extended. To say that a business invitee must choose at his peril one of two doors with which he is unfamiliar in responding to the invitation extended certainly is not supported by reason or logic. I can find no basis in law or fact for this court to substitute its opinion for the judgment of the jury on the question whether plaintiff was outside the scope of his established relation of business invitee. The authorities cited in the dissent of Justice Paine sustain this view. The judgment ought to be affirmed.